UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

DAVID VOGEL

     v.                                                                 Civil No. 24-cv-82-JL-TSM

FCI BERLIN, WARDEN

### REPORT AND RECOMMENDATION

Petitioner David Vogel, proceeding pro se and a federal prisoner currently serving his sentence in home confinement under the supervision of United States Probation Officer Matthew Farwell and the RRM New York Director, filed this petition for habeas corpus relief under 28 U.S.C. § 2241. Vogel asserts that the BOP's policy that he complete forms and obtain preapproval before interviewing with the media violates his First Amendment rights. The respondents – Officer Farwell and the RRM New York Director – move to dismiss, arguing that Vogel lacks standing to pursue his claims and that he is not entitled to relief in any event.[1] Vogel objects. For the following reasons, the district judge should grant the respondents' motion to dismiss (doc. no. 7).

### BACKGROUND

In 2010, a jury convicted Vogel of conspiracy to distribute a controlled substance, in violation of 21 U.S.C. § 846; conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h); and engaging in a monetary transaction in property derived from specified unlawful

---

[1] Vogel initially named Attorney General Merrick Garland, BOP Director Colette Peters, BOP General Counsel "Attorney J. Wills," BOP manager Patrick McFarland, and Probation Officer Scott Davidson as additional respondents. Doc. no. 1 at 1, 4-5. In its order directing service of Vogel's petition, the court found that Officer Farwell and the RRM New York Director were Vogel's immediate custodians and, therefore, the only proper respondents to this action. Doc. no. 3 at 1 n.1.

activity, in violation of 18 U.S.C. § 1957 and 2.  United States v. Vogel, No. 4:08-cr-224-MAC-AM, doc. no. 416 at 1-3 (E.D. Tex. January 10, 2011) (judgment).  The court sentenced Vogel to 20 years imprisonment.  Id. at 3, 8-9.

In 2020, the BOP released Vogel to home confinement due to his age and health.  Vogel is passionate about rehabilitation and teaching, and after his release to home confinement Vogel began delivering "daily sermons" on LinkedIn in which he provides "succinct live leadership advice to C-Suite Leaders each morning."  Doc. no. 1 at 15 ¶ 28.  He also writes a "newsletter" on LinkedIn, which Vogel alleges has 4,851 subscribers.  Id. ¶ 28.

Vogel maintains his innocence, and he is pursuing executive clemency.  To that end, Vogel wishes to go beyond his "daily sermons" and "newsletter" and "engage with the media" to "address multiple articles that have been published about him without offering him an opportunity to respond."  Doc. no. 1 at 2.  In short, Vogel would like to use the media to assert his arguments for clemency.

Although not wholly clear from his petition and attached documents, Vogel appears to be specifically seeking opportunities to be interviewed by what he describes as the "mainstream media."  See, e.g., doc. no. 1-2 at 12 (March 14, 2024 email to BOP officials stating that "[a]t the core of my concern is a significant discrepancy in communication regarding mainstream media").  Vogel indicates in a document attached to his petition that he intends to "network" with Boston Globe CEO Linda Pizzuti Henry.  See id. at 19 ("In the spirit of transparency, my plans are to reach out to the media. . . .  No one knows my name. Yet.  But, I have identified Gannet Media as a potential ally. . . .  And, right now, my #1 potential 'friend,' whom I am making a concerted effort to network with is Linda Puzzuti [sic] Henry CEO of the Boston Globe.") (emphases in

2

original).  Vogel believes that these networking efforts with Henry and others may lead to future media appearance opportunities during which he can advance his attempts to obtain clemency.

In March 2024, Vogel exchanged emails with a probation officer about the BOP's policy with respect to media engagement and, specifically, interviews conducted by members of the media.  From that discussion Vogel understood that the BOP's media policy required completion of two media request forms: one form by Vogel and another form by the "specific media outlet requesting to conduct an interview" with Vogel.[2]  Id. at 15.  Vogel understood that completing these forms is not necessary for Vogel's own productions (i.e., his "daily sermons" or his "newsletter").  See id. at 12 (March 14, 2024 email from Vogel to Attorney Wills).  After receiving the media request forms, the BOP would allow or deny the interview opportunity.

In the emails, Vogel expressed disbelief that the BOP media policy and forms applied to a person released to home confinement as opposed to a person held in formal prison environments.  Vogel also asked for clarification or agreement about whether he could conduct interviews electronically and whether being interviewed on a separate podcast constituted "media by BOP standards."  Id. at 16.  In the emails attached to Vogel's petition, the BOP official appears to take the position that both circumstances require Vogel to complete media request forms.  Vogel does not allege that anyone is currently requesting to interview him, and he did not complete any media request forms.

Vogel filed this § 2241 petition at the end of March 2024.  In his petition, Vogel alleges that the BOP's media policy violates his First Amendment rights.  He asks the court for an

---

[2] The BOP official attached the relevant forms to the emails, but Vogel did not include them with the documents attached to his petition or otherwise identify them.  The relevant forms appear to be "BP-AO232" and "BP-AO233."  The forms reference a BOP policy statement, "Contact with the News Media," which appears to be Program Statement Number 1480.05 ("News Media Contacts").

3

injunction ordering the respondents to allow him "unfettered access to the media" and an order preventing the BOP from retaliating against him. Doc. no. 1 at 21. As to retaliation, Vogel alleges that he asked, at an unspecified time, that a probation officer "send him probationers who wish to further their education," as Vogel believed that he could "assist them in getting grants from the government and/or private entities." Id. at 15, ¶ 27. Vogel alleges that he became "trouble" after he made this request, and a BOP official told him that if he became too much "trouble" probation may decide it does not want to "handle him," meaning that the BOP would revoke his home confinement. Id. at 14, ¶ 26. Vogel also alleges that a BOP official's tone became "hostile" during their phone and email exchanges and that the official made "two specific threats of retaliation." Id. Vogel did not provide further details. Lastly, Vogel alleges that a BOP official threatened to remand Vogel "on a separate issue." Id. at 14-15, ¶ 26. Vogel does not describe what this "separate issue" was, but he asserts the official's position was so "outrageous" that it must have been "a backdoor attempt to silence" him. Id. Vogel remains released to home confinement.

## LEGAL STANDARD

A motion to dismiss for lack of subject-matter jurisdiction is brought under Rule 12(b)(1), and "the party invoking the jurisdiction of a federal court carries the burden of proving its existence." Johansen v. United States, 506 F.3d 65, 68 (1st Cir. 2007) (quoting Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995)). If the party seeking to invoke federal jurisdiction "fails to demonstrate a basis for jurisdiction," the motion to dismiss must be granted. Id. When ruling on a motion to dismiss under Rule 12(b)(1), the court "must credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor." Merlonghi v. United States, 620 F.3d 50, 54 (1st Cir. 2010). The court may also consider uncontested evidentiary submissions,

including proffers, depositions, and exhibits. Id.; Andersen v. Vagaro, Inc., 56 F.4th 11, 13 (1st Cir. 2023).

## DISCUSSION

In their motion to dismiss, the respondents argue that Vogel lacks standing to pursue the allegations in his § 2241 petition because he did not allege a concrete injury. They further contend that, even if Vogel has standing, the BOP's media policy does not violate the First Amendment because it is reasonably related to legitimate penological interests. Vogel objects, asserting that the lack of clarity in the BOP's rules infringe on his First Amendment rights. He also argues that the BOP's media policy does not or should not apply to a person in home confinement. He asks the court to find that he can conduct an interview in writing or over the phone with a podcast host or media member without need to obtain preapproval from the BOP.[3]

### I. Justiciability

Although the respondents framed their argument for dismissal in terms of standing and injury-in-fact, the issue is more cogently discussed using Supreme Court and First Circuit precedents for ripeness.[4] Ripeness, like standing, is premised on Article III's "case or controversy"

---

[3] Because the court recommends dismissal for lack of subject matter jurisdiction, the court does not address the constitutional issues asserted in Vogel's petition.

[4] As a practical matter, however, in this case the ripeness inquiry and standing inquiry are largely two sides of the same coin. See New Hampshire Lottery Commission v. Rosen, 986 F.3d 38, 52 (1st Cir. 2021) ("In the pre-enforcement context, however, the doctrines of standing and ripeness tend to overlap . . . ."). And because ripeness is, like standing, a matter of subject matter jurisdiction, the court may raise the issue sua sponte. See, e.g., Bigda v. City of Springfield, No. CV 23-30067-MGM, 2024 WL 1886103, at *3 (D. Mass. Apr. 29, 2024) ("After reviewing the initial Rule 12(b)(6) motions, the court raised the issue of subject matter jurisdiction sua sponte by requesting briefing on the potential application of the ripeness doctrine . . . ."); Doe v. Univ. of Me. Sys., No. 1:19-cv-415-NT, 2020 WL 981702, at *10 n.13 (D. Me. Feb. 20, 2020) ("Because ripeness is a jurisdictional matter, I can consider the ripeness of Counts I and II sua sponte to ensure that a case or controversy exists for Article III purposes.").

requirement.  See U.S. Const. art. III, § 2, cl. 1; Mangual v. Rotger-Sabat, 317 F.3d 45, 56, 59 (1st Cir. 2003).  "[T]he doctrine of ripeness . . . asks whether an injury that has not yet happened is sufficiently likely to happen to warrant judicial review."  Gun Owners Action League, Inc. v. Swift, 284 F.3d 198, 205 (1st Cir. 2002) (internal quotation omitted); Mangual, 317 F.3d at 59.  When analyzing whether a claim is ripe, the court examines two factors: (1) the fitness of the issues presented for judicial decision and (2) the hardship to the parties of withholding court consideration.  Roman Cath. Bishop of Springfield v. City of Springfield, 724 F.3d 78, 89 (1st Cir. 2013).  Usually, both prongs must be satisfied.  Id.

The first factor – fitness – is concerned largely with the constitutional prohibition against advisory opinions; that is, federal courts cannot "entangle[e] themselves in abstract disagreements."  See Mangual, 317 F.3d at 59.  Thus, the matter presented to the court must present "a sufficiently live case or controversy, at the time of the proceedings, to create jurisdiction in the federal courts."  Roman Cath. Bishop of Springfield, 724 F.3d at 89.  Additionally, the court should ask, as a matter of prudence, "whether resolution of the dispute should be postponed in the name of judicial restraint from unnecessary decision of constitutional issues," because "if elements of the case are uncertain, delay may see the dissipation of the legal dispute without need for decision."  Id. (quoting Mangual, 317 F.3d at 59)).

As to the second factor – hardship – the court must decide "whether the challenged action creates a direct and immediate dilemma for the parties."  Id. at 90 (quoting Sindicato Puertorriqueño de Trabajadores, SEIU Local 1996 v. Fortuño, 699 F.3d 1, 9 (1st Cir. 2012) (per curiam)).  The mere possibility that the petitioner may suffer a future injury, unless it causes "some present detriment," is not hardship.  Id.

Lastly, in cases arising in the First Amendment and free speech context the court must be mindful about the "chilling effect" caused by threatened enforcement of a speech-limiting rule as well as the increased potential for irretrievable loss of rights. See Sindicato Puertorriqueño de Trabajadores, 699 F.3d at 9. In cases where those concerns exist, the court may relax the requirements of ripeness insofar as the petitioner need not "march to the line of illegality to challenge a statute on First Amendment grounds." Project Veritas Action Fund v. Rollins, 982 F.3d 813, 825-26 (1st Cir. 2020) (quoting Sullivan v. City of Augusta, 511 F.3d 16, 31 (1st Cir. 2007), and Sindicato Puertorriqueño de Trabajadores, 699 F.3d at 9).

Vogel's claim that the BOP's media policy violates his First Amendment rights is unripe because it is contingent on uncertain or unlikely future events. As to the first prong, fitness, there is no dispute that the BOP media policy does not apply to the speech in which Vogel currently engages or intends to engage: producing "daily sermons" and periodic "newsletters," and reaching out to media members to garner interest in interview requests. Indeed, the BOP media policy is not applicable to Vogel unless a media member requests to interview him.

Vogel "plans" to reach out to and network with media executives, and he hopes that these efforts may eventually yield an interview request. Doc. no. 1-2 at 19. But Vogel attaches no timeframe to when this might happen, and his petition does not describe circumstances in which he might realistically be placed in a position in which the BOP media policy applies to his conduct. Therefore, Vogel's claim is premised on "uncertain and contingent events that may not occur as anticipated or may not occur at all," and it is unfit for judicial resolution at this time. See Brookline Opportunities, LLC v. Town of Brookline, 682 F. Supp. 3d 168, 181-82 (D.N.H. July 7, 2023) (quoting Ernst & Young v. Depositors Econ. Prot. Corp., 45 F.3d 530, 536 (1st Cir. 1995)).

For the same reasons, the BOP media policy also does not create a present or immediate hardship to Vogel. Simply put, because he does not have any interview requests Vogel is not in a position in which he faces a dilemma between violating the BOP media policy or foregoing lawful activity. See Gun Owners' Action League, Inc., 284 F.3d at 206 (discussing circumstances in which threatened enforcement of a rule may create a "hardship" for purposes of ripeness inquiry).

Vogel's claims are also unfit for judicial resolution to the extent he requests a court order prohibiting potential BOP retaliation against him. See doc. no. 1 at 14, ¶ 26. Similar to his challenge to the BOP media policy, Vogel asks for an injunction in relation to future, uncertain retaliation, and he offers no allegations that suggest he faces or has been threatened with any retaliation for his speech. To support his view that he faces an imminent risk of retaliation, Vogel points to a case involving another prisoner[5] and to comments that BOP officials made in contexts separate from his desire to speak to the media. Vogel also vaguely references other "threats of retaliation" but fails to provide any factual detail about these alleged threats. See doc. no. 1 at 14, ¶ 26. Because Vogel did not allege facts indicating that the BOP is likely to retaliate against him, his claim seeking a court order prohibiting potential future retaliation is unripe. See Roman Cath. Bishop of Springfield, 724 F.3d at 89.

## II.   **Ability to Pursue Claims under § 2241**

Although not addressed by the respondents in their motion to dismiss, the court additionally lacks subject matter jurisdiction to hear Vogel's § 2241 petition because it is an improper vehicle to assert these First Amendment challenges to BOP policy or officer actions.

---

[5] Specifically, Vogel appears to reference Cohen v. Barr, 20 Civ. 5614 (AKH), 2020 WL 4250342 (S.D.N.Y. July 23, 2020), which related to whether the BOP retaliated against a prisoner who was released on furlough by remanding him to prison after he sought to publish a book that was critical of the then-President of the United States.

A habeas petition under § 2241 is appropriate to seek "relief from the manner of execution of a sentence . . . ." Muniz v. Sabol, 517 F.3d 29, 33-34 (1st Cir. 2008). Courts in the First Circuit take the view that to bring a claim under § 2241 for a violation of law in relation to a sentence's manner of execution, the petitioner must challenge, at some level, the validity or duration of his confinement, not merely the conditions of that confinement. See, e.g., Fischer v. Napier, No. 23-12230-FDS, 2023 WL 8190787, at *2 (D. Mass. Nov. 27, 2023) ("If a § 2241 petition does not challenge the validity or duration of a prisoner's confinement, however, the district court lacks jurisdiction to grant relief."); Smith v. Warden, FCI Berlin, No. 20-cv-475-SE-AJ, 2022 WL 2496125, at *2 (D.N.H. June 8, 2022) (observing that courts permit challenges to conditions of confinement under § 2241 only when they are so extreme that they require the petitioner's release), R&R approved, 2022 WL 2486811 (July 6, 2022); McFadden v. Burke, No. 3:22-cv-30062-KAR, 2023 WL 4976299, at *3-*4 (D. Mass. Aug. 3, 2023) ("Petitioner's complaints about the adequacy of food and drink and access to the commissary concern the conditions of confinement that are properly brought in a civil rights action, not in a habeas petition."); Gomes v. U.S. Dep't of Homeland Security, Acting Sec'y, No. 20-cv-453-LM, 2020 WL 3258627, at *3 (D.N.H. June 16, 2020) (concluding that petitioners could challenge conditions of confinement in § 2241 proceeding because they sought "a quantum change in the level of their custody" and requested "immediate release or placement in community-based alternatives to detention"); Tito v. Northern N.H. Corr. Facility Warden, No. 18-cv-361-PB-AJ, 2018 WL 6311473, at *1 (D.N.H. Oct. 26, 2018) (recommending dismissal of First Amendment claim brought by state inmate challenging "phone restriction" because the claim was "well outside the core of a traditional petition for federal habeas relief" and "not analogous to any case where conditions of confinement claims have been allowed to proceed under" § 2241), R&R approved, 2018 WL 6313457 (Dec. 3, 2018). In his petition,

Vogel seeks neither immediate release nor a quantum change in the level of his custody. Rather, Vogel asks the court only to find that the BOP's media policy violates his First Amendment rights and to preclude the BOP from future retaliation against him. Under the circumstances alleged in Vogel's petition, these claims are not cognizable under § 2241 and the court lacks subject matter jurisdiction for that alternative reason.

## CONCLUSION

The district judge should grant the respondents' motion to dismiss (doc. no. 7) and dismiss Vogel's petition without prejudice for lack of subject matter jurisdiction. Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The objection period may be extended upon motion. Only those issues raised in the written objections "'are subject to review in the district court,'" and any issues "'not preserved by such objection are precluded on appeal.'" Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016) (citations omitted).

_____
Talesha L. Saint-Marc
United States Magistrate Judge

August 14, 2024

cc: David Vogel, pro se
     Counsel of Record